[No. A028705. First Dist., Div. Five. Feb. 3, 1986.]

In re the Marriage of NORMA JEAN and KENNETH L. DOWNES, JR.
NORMA JEAN DOWNES, Respondent, v.
KENNETH L. DOWNES, JR., Appellant.

**[Opinion certified for partial publication.\*]**

*Part I is not published because it does not meet the standards for publication contained in California Rules of Court, rule 976(b).

206

COUNSEL

Dolly Ares for Appellant.

James T. Bialson for Respondent.

## Opinion

**KING, J.**— **(1)** In this case we hold that when a motion is made pursuant to Civil Code section 5124 to award the moving party a community interest in a military pension awarded to the other party as his separate property in a stipulated judgment of dissolution which has become final, and there is a factual conflict whether the parties bargained to eliminate this risk as part of entering into their settlement agreement, the court must conduct an evidentiary hearing and resolve this factual issue before it can act on the motion.

Kenneth L. Downes, Jr., appeals from an order granting Norma Jean Downes' motion for modification of their 1982 dissolution decree which had awarded Kenneth's military retirement to him as his separate property. The order modifying the decree awarded Norma a community interest in Kenneth's military pension. We reverse and remand for an evidentiary hearing.

The parties separated in 1981 after 30 years of marriage. During their marriage, Kenneth acquired the right to a military pension payable upon his retirement.

The parties stipulated to an interlocutory judgment of dissolution on May 13, 1982. The separate property section of the dissolution decree states "The parties hereby stipulate, and the Court approves and confirms, the following to be their separate property: [¶] Husband: U.S. Navy Retirement and Veteran's Benefits [¶] Wife: California State Public Employees' Retirement System Benefits from employment at San Jose State University."

At the time the parties obtained their interlocutory judgment of dissolution, the authority of California courts to divide community interests in military pensions was in flux. On June 25, 1981, the United States Supreme Court had held interests in military pensions could not be treated as marital property by the states, based upon its interpretation of congressional intent in enacting applicable federal statutes, under the supremacy clause of the United States Constitution. (*McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].) However, legislation to overturn the holding of *McCarty* was pending in both houses of Congress prior to and on May 13, 1982.

Thereafter, in October 1982, Congress enacted the Federal Uniform Services Former Spouses' Protection Act (F.U.S.F.S.P.A.), 10 United States Code section 1408, effective February 1, 1983. Thus Congress overturned *McCarty* making clear that the United States Supreme Court had misinterpreted its intent and California courts were authorized to treat interests in military pensions as community property as they had done prior to *McCarty*.

F.U.S.F.S.P.A. was not specifically made retroactive to apply to dissolution decrees that became final during the "window" period between the time *McCarty* was decided and the date F.U.S.F.S.P.A. became effective.[1] The California Legislature, however, enacted Civil Code section 5124[2] to make F.U.S.F.S.P.A. applicable to the window period so "[t]he parties therein would receive the same treatment given to similarly situated parties whose dissolution became final before *McCarty* or after the corrective federal law." (See Assem. Com. Rep. on Judiciary, Sen. Bill No. 1034 (1983) p. 3.)

The dissolution decree in the present case became final during the window period. In 1984, Norma moved under section 5124 to modify the dissolution decree to award her one-half of the community property interest in Kenneth's military pension.

In Norma's declaration in support of her motion she claims that in negotiating the marital settlement agreement she considered Kenneth's military pension his separate property because of *McCarty*. In Kenneth's responding declaration he claims the parties entered into the marital settlement agreement assuming his military pension was community property and therefore the motion should be denied. If the court granted Norma's motion, Kenneth's position was that since the parties had treated his pension as community property when they reached their agreement, it would only be fair to reopen the case as to all the assets and as to spousal support since the agreement was an integrated one in which agreement as to each element depended upon agreement on every other element. He contends he waived his entitlement to certain other community property and to spousal support because of the agreement to award him his military pension.

The court refused to take testimony from Kenneth, although requested to do so by his counsel. The record discloses that the only evidence before the court was the offer of proof Kenneth thereafter submitted at the court's request. The offer of proof was that Kenneth would testify (1) both he and

---

[1]However, as our Supreme Court has noted, "for most purposes, *McCarty* not only is not the law but never really was." (*Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421-422 [212 Cal.Rptr. 162, 696 P.2d 656].)

[2]Unless otherwise indicated, all further statutory references are to the Civil Code.

Norma treated all their major assets, including his pension, as community property; (2) the settlement agreement was an integrated one, that is, each element depended on every other element; (3) Kenneth suffered from a condition called spastic colon which prevented him from obtaining full-time employment; and (4) Kenneth waived spousal support and any claim to Norma's patents or teaching pension in reliance on her waiving any claim to his military pension.

The court granted Norma's motion to divide Kenneth's military pension as a community property asset.

### I.*

. . . . . . . . . . . . . . . . . . . . . . .

### II.

Kenneth argues the court failed to exercise discretion when it granted Norma's motion for modification.

The legislative history of section 5124 states frequently that the purpose of Senate Bill No. 1034 is corrective in nature. "Former spouses of ex-servicemen whose dissolutions became final after *McCarty*, but before S-2248 [F.U.S.F.S.P.A.] became law, would thereby be assumed [*sic*] of equal treatment on the question of pension rights on a par with similarly situated former spouses whose dissolutions became final before *McCarty* or after S-2248." (See Sen. Com. Rep. on Judiciary, Sen. Bill No. 1034 (1983) p. 5.)

The Senate Committee Report on section 5124 estimated that because of the *McCarty* decision many dissolution decrees "probably omitted from the divisible community property the accumulated pension rights of the service spouse." (*Id.*, at p. 4.) It is quite clear from this report that the "correction of [this] hardship" is the purpose of the bill. (*Id.*, at p. 5.)

The legislative history also recognized that despite the *McCarty* decision, the rule making military pensions separate property was unsettled during the window period. Nevertheless, "there are undoubtedly some women who could be denied the benefits of S-2248 solely because their divorce became final during a brief window in time between the *McCarty* decision and S-2248" when their servicemen-husbands could refuse to negotiate over

---

*See footnote, *ante,* page 205.

military pensions claiming them as separate property. (Mem. from John Donhoff to Sen. Barry Keene, Chairman of the Sen. Com. on Judiciary (Jan. 6, 1983) p. 5.)

Kenneth argues the court cannot modify a dissolution decree under section 5124 when it would be inequitable to do so. Section 5124 gives the court authority to modify a dissolution decree to include a community property division of the service spouse's military pension; however, this authority is discretionary. The legislative history and the clear language of the statute indicate the court has discretion to apply equitable principles in reaching a decision whether to modify a dissolution decree entered during the window period which awards revolving military pension rights to one spouse because of the assumption that *McCarty* compels the award of the pension as the separate property of that spouse.

The statute states "community property settlements . . . *may* be modified to include a division of military retirement benefits." (§ 5124, subd. (a), italics added.) The legislative history is replete with statements which indicate the equitable nature of the intended relief. "The parties herein would receive the *same treatment given to similarly situated parties* whose dissolutions became final before *McCarty* or after the corrective federal legislation." (See Assem. Com. Rep. on Judiciary, Sen. Bill No. 1034 (1983) p. 3, italics added.)

The transcript of the hearing on Norma's motion suggests that the trial court felt it was mandated to set aside the agreement under section 5124 because it had been entered during the window period. However, the court's order granting her motion stated: "Retroactive legislation necessarily brings some unfairness. In the instant case it is the feeling of the court that it would be even more unfair to rehash by conjecture what a different cast of characters did three years ago."[3] This language causes us to conclude the court decided action under the statute was discretionary, not mandatory.

Thus, although we agree with Kenneth that a court cannot modify a dissolution decree under section 5124 when it would be inequitable to do so, there is no reversible error on this ground because the court did not treat section 5124 as mandatory in nature and considered the element of equity in ruling on Norma's motion.

---

[3]This statement apparently refers to the fact the parties each were represented by different counsel on Norma's motion than they had representing them at the time of their stipulation. Although we agree no issue should be decided if a court has to "rehash by conjecture," we do not agree that an evidentiary hearing as to what occurred during the parties' negotiations leading to settlement could not have led to a determination of the critical factual issue in dispute.

## III.

Kenneth's primary argument is that the court abused its discretion in granting Norma's motion without regard to whether the parties treated the pension as separate or community property in their stipulated judgment. The moving and responding papers raised a serious factual conflict as to whether the parties, in reaching their stipulation, treated Kenneth's military pension as community property, despite the *McCarty* decision. There certainly is material in the county clerk's file, as well as in the language of the interlocutory judgment of dissolution, which could support the conclusion that they did.[4] As indicated above, the record before us discloses that there was no evidence before the court except for Kenneth's offer of proof, which was made pursuant to the court's request after it denied Kenneth's request to present testimony.

---

[4]Because the record before us was incomplete, on our own motion we have obtained the county's clerk's file in this case. A review of that file makes it clear just how necessary it is that an evidentiary hearing take place before Norma's motion is granted or denied.

Norma's petition for dissolution of marriage claims Kenneth's military retirement is community property. Kenneth's response requests that he receive spousal support and alleges the military pension is his separate property. At the time of an early order to show cause for temporary orders, Kenneth's supporting declaration alleges he has serious health problems which preclude full-time employment and thus he should receive spousal support. Norma's attorney, even at that time, acknowledged that Kenneth's military pension was his separate property under *McCarty,* but requested a reservation of jurisdiction over the pension because congressional action might occur which would enable Norma to obtain an interest in the pension at a later time.

Pursuant to local rules, each of the parties filed extensive pretrial statements shortly before trial, a review of which is most instructive. Kenneth took the position his military pension was his separate property under *McCarty* and Congress could not pass ex post facto laws which would give Norma any interest therein, thus the court should not reserve jurisdiction over that asset. He requested spousal support because of her income and his disability. He also sought the sum of $35,000 from the community for having given Norma an education during the marriage ("Sullivan" rights), and made claims of community interests in certain patents Norma had obtained during the marriage for word processing, as well as for royalties from academic works she had produced during the marriage. Norma's pretrial statement stated: "Husband has a retirement fund with the United States Navy. The current state of law is that this is a [*sic*] separate property of husband. However, because the law in the pensions area is subject to either legislative or judicial modification, it is requested that the court reserve jurisdiction over this asset."

Just after filing these pretrial statements the parties attended two judicially supervised settlement conferences which resulted in the stipulated settlement incorporated into the interlocutory judgment of dissolution. The settlement provided, among other things, that Kenneth waived spousal support as well as any claim to any community interest in patents, royalties or "Sullivan" rights, while Norma waived any interest in Kenneth's military pension. These documents, as well as many other statements in declarations of the parties found in the county clerk's file, make it clear there is a factual issue which must be the subject of an evidentiary hearing before the court can exercise its discretion under section 5124. It is interesting to note that the provision waiving spousal support provides that waiver of spousal support, in addition to other reasons, is entered into "by both parties in consideration of the total agreements made in settlement, including . . . disposition of . . . assets, and the specific waivers listed hereinabove." This could apparently include Norma's' waiver of any community interest in Kenneth's military pension.

Since the legislative history of section 5124 makes clear that the Legislature intended to grant relief only to those parties who mistakenly treated military pensions as separate property because of the *McCarty* decision, the trial court must make a factual finding as to whether the parties treated Kenneth's military pension as separate property because of *McCarty,* before it can grant Norma's motion under section 5124. If the parties believed Congress might enact legislation overturning *McCarty* which could allow Norma to pursue her claim of an interest in Kenneth's military pension, and the settlement was entered into in whole or in part to eliminate this risk, it would be an abuse of discretion for the court to grant Norma's motion.

### IV.

Kenneth also raises the issue of whether the court must set aside the entire agreement if it exercises its discretion under section 5124 as to the community interest in the military pension. The issue could also be raised that such a retroactive change in the law, even if constitutional, would require the entire stipulated judgment to be set aside on the basis of extrinsic mistake. (See *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051 [202 Cal.Rptr. 116].) Finally, there is the issue of whether section 5124 violates due process by retroactively authorizing the reopening of the disposition of military pensions awarded in judgments which have long been final. This issue takes on added significance with our Supreme Court's holding that the provisions of section 4800.1, which also attempted to retroactively apply a change in the law, violate due process and are unconstitutional. (See *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354].) But because of our conclusion that the critical factual issue must first be determined by the trial court after an evidentiary hearing, we deem it premature to examine those issues.

### V.

The judgment is reversed and the cause is remanded with directions to the trial court to conduct an evidentiary hearing and thereafter rule on Norma's motion under section 5124. The parties shall bear their own costs on appeal.

Low, P. J., and Haning, J., concurred.