[No. A032919. First Dist., Div. One. Mar. 17, 1987.]

In re the Marriage of CAROLYN S. and WAYNE D. DERYCK.
CAROLYN S. DERYCK, Respondent, v.
WAYNE D. DERYCK, Appellant.

294

**COUNSEL**

Wayne D. Deryck, in pro. per., for Appellant.

Whiting & Becksted and Sidney E. Whiting III for Respondent.

OPINION

ELKINGTON, J.—Wayne D. Deryck, pro se, appeals from that portion of the order granting Carolyn S. Deryck's motion pursuant to former Civil Code section 5124 modifying their 1981 property settlement by awarding her a community interest in Wayne's military pension.

We reverse and remand for further proceedings.

On July 9, 1980, Carolyn filed a petition for dissolution of marriage. The parties had been married since 1963, during which time Wayne served in the Navy. On May 7, 1981, the parties filed a stipulated marriage settlement agreement. Although at that time a spouse's military pension was considered to be community property in California (*In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], disapproved on other grounds in *In re Marriage of Brown, supra,* 15 Cal.3d at p. 851), the marriage settlement agreement anticipated a determination of the characterization of military pensions by the United States Supreme Court.

The marriage settlement agreement, in part, provided:

"DIVISION OF PROPERTY: (a) Husband hereby sells, transfers, conveys, and assigns to wife as her sole and separate property the following: . . .

"3. Husband's interest in wife's retirement credits with United States Air Force Civil Service.

"(b) Wife hereby sells, transfers, conveys, and assigns to husband as his sole and separate property the following: . . .

"3. Wife's interest in husband's retirement credits with United States Navy.

"(c) The parties agree that title in the family residence shall be transmuted from joint to tenancy in common and that said residence shall be solely and exclusively occupied by wife until the Supreme Court of the United States rules in the case of MCCARTY vs. MCCARTY upon the issue of whether military retirement pay is community property under California law. If the ruling is that the husband's retirement pay is community property under California law, husband shall have no interest in the house and shall quitclaim or grant his interest therein to wife. Should the ruling be that military retirement pay is not community property, but the husband's sole prop-

erty, wife shall at her discretion, continue to occupy the residence until: [list of several contingencies not relevant to this appeal]. Thereafter on demand by husband or at any time after the Interlocutory Decree and the ruling of the Supreme Court referred to above at discretion of wife, the residence will be sold, and ... the remaining proceeds of sale shall be divided equally between the parties."

An interlocutory judgment of dissolution incorporating the settlement agreement was filed on May 15, 1981. The final judgment was filed on June 11, 1981.

Two weeks later, on June 26, 1981, the United States Supreme Court filed its decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], holding that federal law precluded state courts from dividing military retirement pay under state community property laws.

At some point subsequent to the *McCarty* decision, the parties apparently sold the house and equally divided the proceeds pursuant to the terms of the settlement agreement.

Responding to the *McCarty* decision, Congress enacted the Federal Uniform Services Former Spouses' Protection Act (FUSFSPA)[1] which essentially abrogated the *McCarty* holding. (*Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421-422 [212 Cal.Rptr. 162, 696 P.2d 656]; *In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856].) FUSFSPA was not effective, however, until February 1, 1983, and California courts refused to give it retroactive application to those judgments that became final during the window period between *McCarty* and FUSFSPA's effective date. (See e.g., *Mueller* v. *Walker* (1985) 167 Cal.App.3d 600, 605 [213 Cal.Rptr. 442].)

To rectify this problem, the California Legislature enacted Civil Code section 5124,[2] providing for the modification of community property settle-

---

[1]"Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C. § 1408(c)(1).)

[2]Civil Code section 5124 provided: "(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

"(b) Modification of community property settlements, judgments or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as

ments, judgments, or decrees that became final during the window period to include a division of military retirement benefits. As has been noted, "The legislative history of section 5124 states frequently that the purpose of Senate Bill No. 1034 is corrective in nature. 'Former spouses of ex-servicemen whose dissolutions became final after *McCarty* but before [FUSFSPA] became law, would thereby be assumed [*sic*] of equal treatment on the question of pension rights on a par with similarly situated former spouses whose dissolutions became final before *McCarty* or after [FUSFSPA].' (See Sen. Com. Rep. on Judiciary, Sen. Bill No. 1034 (1983) p. 5.) . . . [¶] The legislative history also recognized that despite the *McCarty* decision, the rule making military pensions separate property was unsettled during the window period. Nevertheless, 'there are undoubtedly some women who could be denied the benefits of [FUSFSPA] solely because their divorce became final during a brief window in time . . .' when their servicemen-husbands could refuse to negotiate over military pensions claiming them as separate property.' " (*In re Marriage of Downes* (1986) 177 Cal.App.3d 205, 209-210 [222 Cal.Rptr. 776].) In other words, the Legislature intended to provide relief to those parties who effectuated property settlements during this period in reliance on or under compulsion of *McCarty*.

Relying on Civil Code section 5124 (hereafter section 5124), Carolyn filed on April 25, 1985, a motion requesting that the settlement agreement be modified to include a division of Wayne's military retirement pay. The court filed its order granting the motion on July 25, 1985, awarding Carolyn a 39 percent interest in Wayne's retirement benefits. This appeal followed.

█ Noting that by its express terms section 5124 applies to "[c]ommunity property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983," Wayne first contends that the lower court erred in applying the statute to this matter because the settlement agreement, interlocutory decree, and final dissolution decree all were filed prior to June 25, 1981. Carolyn asserts that the judgment did not become final until after that date because it remained subject to direct attack.

Wayne's position is seemingly supported by *In re Marriage of Van Dyke* (1985) 172 Cal.App.3d 145 [218 Cal.Rptr. 11]. In that case, the parties

community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986.

"(d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."

entered into a settlement agreement in January 1982, providing that the husband's military pension was his separate property. The judgment of dissolution, however, was not filed until May 6, 1983, after the expiration of the window period expressly covered by section 5124.

The court rejected the husband's contention that a community property settlement becomes final on the date on which the judicial judgment or decree incorporating it becomes final, noting that the words "community property settlements" contained in section 5124 would be surplusage under such a construction. Rather, the court determined that "[g]iven the legislative purpose, it is more reasonable to construe section 5124 as an effort to relieve parties from community property settlements which were *consummated* when the provisions of the USFSPA were not yet operative and *McCarty* was the controlling law. Consequently, we interpret 'community property settlements . . . which became final on or after June 25, 1981, and before February 1, 1983 . . .' as referring to those valid settlements which were entered into between the designated dates." (172 Cal.App.3d at 150; our italics.)

Although the parties in this matter entered the settlement agreement prior to June 25, 1981, by its express terms the agreement's provisions concerning the property division did not become operative until the Supreme Court filed the *McCarty* opinion on June 26, 1981. After *McCarty* was filed, the parties then proceeded to "consummate"[3] the terms of the agreement by dividing the property in reliance on what then was for a time the supreme law of the land and in accordance with the agreement's express terms. Under these circumstances, we do not perceive the distinction between a property settlement agreement that was entered initially during the window period or one whose alternate terms were performed during this time, assuming that both agreements were made or performed in reliance on *McCarty*.

Under these circumstances, we hold that the lower court acted correctly in applying section 5124 to the subject settlement agreement.

■ However, we are nevertheless compelled to reverse the superior court's order and remand for further proceedings.

Section 5124, subdivision (a), provides that "[c]ommunity property settlements . . . *may* be modified to include a division of military retirement benefits." (Italics added.) As another division of this court has determined: "The legislative history and the clear language of the statute indicate the

---

[3]Webster's New Collegiate Dictionary (1981) page 242, defines "consummate" as "1.a: Finish, complete b: to make perfect . . . to become perfected."

court has *discretion* to apply equitable principles in reaching a decision whether to modify a dissolution decree entered [or consummated] during the window period which awards revolving military pension rights to one spouse because of the assumption that *McCarty* compels the award of the pension as the separate property of that spouse." (Our italics; *In re Marriage of Downes, supra,* 177 Cal.App.3d at p. 210.) "[U]nder section 5124 the trial court has discretion to deny such modification on equitable grounds. [Citation.] Thus, the trial court may condition the grant of modification upon agreement of the moving party to do equity." (*In re Marriage of Doud* (1986) 181 Cal.App.3d 510, 524 [226 Cal.Rptr. 423].)

The clerk's transcript and the reporter's transcript of the hearing reveal that neither party submitted declarations in support of their positions, and the court did not hear testimony nor receive evidence of any kind. Instead, the court merely determined that as a matter of law section 5124 compelled it to award Carolyn a community interest in Wayne's military pension. In failing to exercise its discretion, the court committed reversible error. (*In re Marriage of Downes, supra,* 177 Cal.App.3d at p. 210.)

Finally, we have considered Wayne's res judicata arguments and find them meritless. (See *In re Marriage of Castle* (1986) 180 Cal.App.3d 206, 212-213 [225 Cal.Rptr. 382]; *In re Marriage of Potter* (1986) 179 Cal.App.3d 73, 79-80 [224 Cal.Rptr. 312]; *Mueller* v. *Walker, supra,* 167 Cal.App.3d at pp. 606-607.)

That portion of the superior court order awarding Carolyn S. Deryck a 39 percent community interest in Wayne D. Deryck's military retirement pension is reversed and the cause is remanded for further proceedings not inconsistent with this opinion. Each party to bear his or her costs on appeal.

Racanelli, P. J., and Holmdahl, J., concurred.