[Civ. No. 65783. Second Dist., Div. Three. Apr. 26, 1983.]

In re the Marriage of PATRICIA and MacMILLAN HOPKINS.
PATRICIA HOPKINS, Respondent, v.
MacMILLAN HOPKINS, Appellant.

COUNSEL

Mackey & Mansfield and Larry M. Hoffman for Appellant.

Gassner & Gassner and Lawrence M. Gassner for Respondent.

OPINION

ROSS, J.*—MacMillan Hopkins (hereinafter Husband) appeals from a judgment entered by the trial court in characterizing and evaluating certain items of property as community property and in dividing the community property of the parties appropriately.

We disagree with Husband's contentions and affirm the judgment.

### PROCEDURAL AND FACTUAL BACKGROUND

Patricia Hopkins (hereinafter Wife) filed a petition for dissolution on October 19, 1978. A response was filed by Husband and the matter was bifurcated for

---

*Assigned by the Chairperson of the Judicial Council.

trial. An interlocutory judgment as to status only was entered on February 19, 1980, and the matter proceeded to trial on the property issues on October 6 and 8, 1980, Honorable Richard Montes, judge presiding. Judgment was entered by the trial court on December 22, 1980. At time of trial, Wife introduced evidence as to the valuation of various items of community property, including the actuarial-computed value of Husband's military retirement. Husband was a retired Army warrant officer and was receiving a military retirement pension at time of the trial. Husband introduced no evidence to rebut the valuations that were introduced by Wife at time of trial. No transcript of the trial proceedings held the first day was prepared for the use by this court. After filing of judgment, Husband moved for reconsideration of the judgment and offered, for the first time, to introduce evidence as to the true valuation of the items theretofore determined by the trial court. The motion was heard and denied on March 21, 1981.

## CONTENTIONS ON APPEAL

1. Did the trial court commit error in evaluating and dividing a military pension as a part of the community assets of the parties.

2. Did the trial court commit error in its findings on the valuation of the community assets.

## DISCUSSION

Although the status of the Husband's military pension as community property was clearly delineated at the time of the dissolution proceedings, a series of decisions and congressional enactments since that time have raised a great deal of doubt as to the treatment of military pensions since the date of entry of the judgment in this matter.

Trial in this matter was bifurcated and an interlocutory judgment as to status only was entered in February 1980. The trial relative to the division of the community assets was held on October 6 and 8, 1980, and a decision entered on the reserved property and support issues on December 22, 1980. The Husband's motion for reconsideration was heard and denied on March 12, 1981. It is clear, therefore, that the trial judge applied the law as it existed prior to the decision of the United States Supreme Court in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], which was argued March 2, 1981, and decided June 26, 1981. The question squarely presented to this court therefore is the effect of the *McCarty* holding on cases not yet final and which were pending when Congress passed the Uniformed Services Former Spouses' Protection Act, Public Law No. 97-252, title X, sections 901-06, 96 Stat. 730 (Sept. 8, 1982) (to be codified as 10 U.S.C.).

## Status of Community Property Law Prior to McCarty

In a series of cases starting with *French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366], the position of the California courts has evolved from the holding that nonvested pension rights are not property but a mere expectancy and thus not a community asset subject to division upon dissolution of a marriage, to the pre-*McCarty* position that not only are military pensions a community asset subject to division upon dissolution of the marriage, (*In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], cert. den. (1974) 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41])[1] but that even nonvested pension rights are a community asset subject to division in a dissolution proceeding. (*In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; see also, *In re Marriage of Milhan* (*Milhan I*) (1974) 13 Cal.3d 129, 131 [117 Cal.Rptr. 809, 528 P.2d 1145]; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 782 [148 Cal.Rptr. 9, 582 P.2d 96].)

While the right to the military pension in the *Fithian* case, *supra,* was vested at the time of the dissolution, our California Supreme Court considered the question of congressional intent and held, despite the contentions of the husband therein, that Congress did not intend federal military pay to be the separate property of the recipient. The court determined that federal law did not preempt the right of the state courts to classify and divide these pension rights and California law did not interfere in any way with the accomplishment of the goals of Congress in creating the federal retirement pay system, *Fithian, supra,* 10 Cal.3d at page 597.

The principle of *Fithian* was extended in *Brown* by the holding that the wife was entitled to share in the husband's nonvested pension rights to the extent that such rights were attributable to his work during the period when the parties were married and living together; specifically overruling *French* and a series of cases that had theretofore cited *French* as controlling nonvested pension rights, *Brown, supra,* 15 Cal.3d 838, 847.

It would have appeared well-settled therefore prior to June 26, 1981, that military pensions, whether vested or nonvested, were community assets and subject to the jurisdiction of the California courts upon dissolution of the marriage.

## Effect of McCarty v. McCarty

*McCarty* involved a regular army Colonel who filed a petition for dissolution in California. At the time of the petition, he had served 18 of the 20 years re-

---

[1]Central to the court's reasoning in treating retirement benefits as a community asset is the concept that they do not derive from the beneficence of the employer but are properly part of the compensation earned by the employee (service member). *Fithian, supra,* 10 Cal.3d at page 596.

quired for retirement with pay[2] at various locations both within and without the State of California. The superior court entered a judgment in 1977 finding, among other items, that his military pension and retirement rights were subject to division as quasi-community property. The court then divided the pension as quasi-community property. Husband sought review of that portion of the superior court's decree that awarded his former wife an interest in the retired pay. The California Court of Appeal affirmed the award; the California Supreme Court denied husband's petition for a hearing and the United States Supreme Court granted a hearing.

The United States Supreme Court agreed with Husband's argument that the application of community property law conflicts with the federal military retirement schemes[3] regardless of the classification of the compensation as current or deferred. The court further held that the application of community property principles to military retired pay "threatens grave harm to 'clear and substantial' federal interests." (*McCarty, supra,* at p. 232 [69 L.Ed.2d at p. 606].) While relying heavily on its decision in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802], which involved nonrecognition of community property rights under the Railroad Retirement Law, the court resolved that the congressional motives and goals in establishing a retirement system for military personnel had preempted the field of community property classification by the state courts. *McCarty, supra,* at page 223 [69 L.Ed.2d at p. 600]. The court then concluded that inasmuch as the community property division of retired pay has the potential to frustrate (congressional) objectives, (*McCarty, supra,* at p. 233 [69 L.Ed.2d at p. 606]) it thus reversed the judgment of the California Court of Appeal.[4]

Although subject to a vigorous, and well-reasoned dissent, it is clear that under the supremacy clause, state law must yield no matter how clearly the subject matter otherwise falls within the state's acknowledged sphere of power, *Free* v. *Bland* (1962) 369 U.S. 663 [8 L.Ed.2d 180, 82 S.Ct. 1089]. The holding of the United States Supreme Court in *McCarty* invalidated the holding of *Fithian* and those other cases which had held that our state courts could divide military pensions during a dissolution of the marriage.

---

[2]Either enlisted personnel or officers of the Uniformed Services may retire with pay after a minimum of 20 years of active service. (10 U.S.C. §§ 3911, 3917.)

[3]"We conclude, therefore, that there is a conflict between the terms of the federal retirement statutes and the community property right asserted by (Husband) here." (*McCarty,* 453 U.S. at p. 232 [69 L.Ed.2d at p. 605].)

[4]"Congress has weighed the matter and '[i]t is not the province of state courts to strike a balance different from the one Congress has struck.'" (*McCarty,* 453 U.S. at p. 236 [69 L.Ed.2d at p. 608].)

## Uniformed Services Former Spouses' Protection Act

Congress responded to the *McCarty* decision by introducing legislation[5] that led to the passage of the Uniformed Services Former Spouses Protection Act (the Act) as a part of Public Law No. 97-252, title X, thereof. That Act amended chapter 71 of title 10, United States Code by adding section 1408, among others. The effect of section 1408 clearly and unequivocally is to allow state courts to treat disposable retired or retainer pay of a retired member as community property.[6] The law allows courts to make orders for the payment of a portion of such retired pay directly to a spouse and that order is enforceable upon and recognizable by the military service.[7]

To the extent that *McCarty* is based upon the court's holding that Congress did intend to and did preempt the law of community property, Congress has now spoken and clearly allows states to determine the divisibility and character of military pensions. The impediment to the enforcement of the *Fithian* doctrine now being removed, it once again is the law of this state.[8]

Of concern to the decision in the case at bar, and to the many family law practitioners in this state is the effect of the Act upon cases not final upon the effective date of the Act.[9]

## Retroactivity of the Act

*Cases final when McCarty was decided.*

The progeny of *McCarty* were quick to appear. *McCarty* was decided on June 26, 1981. On November 4, 1981, a decision was entered in *In re Fellers* (1981)

---

[5]"On June 26, 1981, the Supreme Court handed down its decision in the case of McCarty v. McCarty . . . . In response to this decision and the courts' deference to the Congress in military matters, I introduced S. 1814 (the Act) on November 4, 1981 . . . ." Opening statement by Senator Roger Jepsen before the Senate Manpower and Personnel Subcommittee, Committee on Armed Services, June 11, 1982.

[6]10 United States Code section 1408(c)(1): "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."

[7]10 United States Code section 1408(d)(1): ". . . the Secretary shall . . . make payments to the spouse or former spouse in the amount of the disposable retired or retainer pay of the member specifically provided for in the court order. . . ."

[8]"The [Act] would permit disposable military retired pay to be considered as property . . . . This provision in [the Act] would have the effect of reversing the decision of the United States Supreme Court in the case of *McCarty* v. *McCarty*. . . ." Report on conferees, see Congressional Record H5999 (daily ed. Aug. 16, 1982).

[9]Section 1006(a): "The amendments made by this title shall take effect on the first day of the first month which begins more than one hundred and twenty days after the date of the enactment of this title." (Feb. 1, 1983, is the effective date for implementation of the Act.)

125 Cal.App.3d 254 [178 Cal.Rptr. 35], that the decisional law of *McCarty* should not be given retroactive application to a case where the issue of the community nature of a military retirement pension had been adjudicated and the judgment had become final prior to the date of the *McCarty* decision. *Fellers* did, however, involve an interlocutory judgment of dissolution entered in January 1976 awarding the wife 40 percent of the husband's military retirement. A final judgment of dissolution incorporating the property disposition set out in the interlocutory judgment was entered in October 1976. The husband moved in November 1979 for an order modifying the judgment to declare his pension rights to be his sole and separate property was denied. In refusing to give retroactive effect to *McCarty,* the court reviewed and properly considered the disastrous effect of reopening all of the cases that had been decided on the status of the law pre-*McCarty* would have; that it would flaunt the rule of res judicata,[10] upset settled property distributions on which parties have planned their lives and unsettle judgments entered as long as 40 years ago. (*Fellers, supra,* 125 Cal.App.3d at p. 257; see also, *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 [177 Cal.Rptr. 380].)

It is interesting to note that *Fellers* was decided November 4, 1981. The conference report on the Act contained no prohibition against courts reopening decisions before that date but the conferees agreed with the results reached in *Fellers,* some nine months after our Court of Appeals rendered its decision.[11]

*Cases not final when McCarty was decided but pending upon effective date of the Act.*

In the case at bar, the trial court properly applied the law in effect at time of trial; considered the military pension of the husband to be community property and took that asset into consideration in rendering its judgment. Judgment was entered by the trial court on December 22, 1980. Appeal from that judgment was timely filed on February 20, 1981.

Husband contends that the holding in *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 [177 Cal.Rptr. 380] is applicable to this case inasmuch as he did raise the preemption issue on appeal. In *Sheldon* the husband had stipulated

---

[10]". . . [O]ur high court has specifically ruled that a judgment will not be denied res judicata effect just because the rule on which it was based has since been changed. [Citations.]" (*In re Marriage of Fellers, supra,* 125 Cal.App.3d at p. 257.)

[11]"Although the conference report contains no prohibition against courts reopening decisions before that date, the conferees agreed that changes to court orders finalized before the McCarty decision should not be recognized if those changes were effected after the McCarty decision (and before the effective date of the new title X) to implement the holding in that decision (for example, a modification setting aside a pre-McCarty division of military retired pay)." Report on conferees, see Congressional Record, H5999-6000 (daily ed. Aug. 16, 1982).

to the community nature of his naval pension. After the Court of Appeal had filed an unpublished opinion rejecting the husband's challenge on other grounds, the *McCarty* case was decided. Husband then sought a rehearing and requested reversal based upon the holding of *McCarty.* The court there refused to consider all of the issues that might have been raised by *McCarty* and specifically confined its holding to the salient question before it. The community property questions not having been raised in the first appeal, the court refused to consider it upon rehearing. "We have no quarrel with applying *McCarty* to cases not final on appeal where the federal preemption issue was argued by the service member-spouse in the trial court and where the issue was raised on appeal." (*Sheldon,* 124 Cal.App.3d 371, 381.)[12]

Likewise, we confine ourselves to the single issue of the applicability of the *McCarty* doctrine to a case that is not yet final where the issue of community property rights in military pensions was decided pre-*McCarty,* was pending during the reign of *McCarty,* and then the issue on appeal is decided after the effective date of the Act.

Under traditional theory, an overruled decision is considered not to have established bad law, but to have merely misstated the law, *Forster Shipbldg. Co.* v. *County of L. A.* (1960) 54 Cal.2d 450 [6 Cal.Rptr. 24, 353 P.2d 736]. The holding of *Fithian,* then, should be considered good law up until June 26, 1981. To determine the status of those cases pending at this time, we should consider the traditional factors looked at by courts in determining whether or not to apply retroactivity to a new decision. ■ ■■■■ In doing so, we should be guided by considerations of fairness and public policy. (*Forster, supra,* at p. 459.)[13]

There have been many factors evaluated in those decisions discussing the retroactivity of a change in the law.[14] The three apparently bed-rock factors are: the extent of the public reliance upon the former rule; the ability of litigants to foresee the coming change in the law and whether retroactive application of the rule could produce substantial inequitable results. (*Chevron* v. *Huson* (1971) 404 U.S. 97 [30 L.Ed.2d 296, 92 S.Ct. 349]; *In re Marriage of Brown*

---

[12]But note that *Sheldon* was decided on October 7, 1981, well before the effective date of the Act.

[13]In the absence of a determination by the Supreme Court authorizing prospective application only, the general rule applies that the decision is retrospective in its operation. (*Ralston Purina Co.* v. *County of Los Angeles* (1976) 56 Cal.App.3d 547, 558 [128 Cal.Rptr. 556]; (nonretrospectivity is the exception, not the rule); *United States* v. *Estate of Donnelly* (1970) 397 U.S. 286, 295 [25 L.Ed.2d 312, 319, 90 S.Ct. 1033].)

[14]*Chevron Oil Co.* v. *Huson* (1971) 404 U.S. 97 [30 L.Ed.2d 296, 92 S.Ct. 349]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421]; *Ralston Purina Co.* v. *County of Los Angeles, supra,* 56 Cal.App.3d 547; *Forster Shipbldg. Co.* v. *County of L. A., supra,* 54 Cal.2d 450.

(1976) 15 Cal.3d 838, 850 [126 Cal.Rptr. 633, 544 P,2d 561, 94 A.L.R.3d 164]; *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 [177 Cal.Rptr. 380]; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96].)

We must recognize here that we are actually dealing with a two-fold problem; the reversal by *McCarty* of established case law and then the reversal of that decision by congressional intervention. To the extent that we apply full retroactivity to the Act for pending cases we are restating and reaffirming the law as it appeared to be prior to *McCarty*.

As has been discussed, the trend in California has been to establish military pensions as being a community asset subject to the division and jurisdiction of the court upon a dissolution of the marriage.[15] The Act has done nothing but reinstate that principle which has been established by the California Supreme Court and upon which countless persons have settled their marital difficulties. The impediment to treatment of military pensions as community property, i.e., federal preemptions, has been set aside. To the extent that *Fithian* could be said during the reign of *McCarty* to have stated an erroneous ruling it must once again be honored in order to continue the " 'well-ordered functioning of the judicial process.' " (*In re Marriage of Fellers, supra,* 125 Cal.App.3d at p. 257.) To apply full retroactivity would leave the great balance of the domestic judgments rendered in this state in the last 40 years in the position that Congress now says they should be, i.e., decided under California law. To do otherwise would be chaos.[16]

While an attorney has an obligation to foresee changes in the coming law (*Smith* v. *Lewis* (1975) 13 Cal.3d 349 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231]) it would not be apparent that the Supreme Court of the United States would have reversed the ruling of the California Supreme Court in a case in which they had already denied certiorari. (*Fithian, supra,* 10 Cal.3d 592, cert. den., 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41], rehg. den. (1974) 419 U.S. 1060 [42 L.Ed.2d 657, 95 S.Ct. 644].) The question of whether or not the

---

[15]See Fleming, *The Supreme Court of California* (1976) 64 Cal.L.Rev. 286, 308, in discussing the forewarning of the coming of the ruling in *Fithian*. "The result in *Fithian* did not come as a surprise to observers of community property law in California. The reasons for the exclusion of military pay and other benefits from the property of the community . . . have long ceased to exist. . . . As the reason for the rule ceased, California courts gave notice of the ultimate result to be reached in *Fithian*."

[16]California has not been unique in holding that military pensions are subject to the jurisdiction of the divorce courts. Before the *McCarty* ruling, all of the eight community property states and a number of the 39 equitable distribution states permitted military retired pay to be considered a marital asset, subject to division. The three separate "title" states—Mississippi, Virginia, and West Virginia—consider pensions to be the sole property of those who earn them. In at least six other states military retired pay may not be considered joint marital property subject to division. See Congressional Record H4717 (daily ed. July 28, 1982).

federal law had preempted state law was raised and discussed at length in the *Fithian* case.

At one time there was some uncertainty that may have existed concerning the treatment of federal pensions. Some eminent scholars were of the opinion that federal retirement benefits were the personal entitlement of the employee spouse and thus were not subject to community division upon divorce in the absence of express congressional approval. (See Goldberg, *Is Armed Services Retired Pay Really Community Property?* (1973) 48 State Bar J. 12.) It would appear, however, that after our Supreme Court in *Fithian*[17] expressly discussed Judge Goldberg's article, set forth his theory that the characterization of a federally created property right is exclusively a matter of federal law, and then rejected it, that this contention should have been laid to rest for all but the most tenacious (and as it turned out, most farsighted) attorneys. (See *In re Marriage of Milhan (Milhan II)* (1980) 27 Cal.3d 765 [166 Cal.Rptr. 533, 613 P.2d 812].)

While no statistics are available, it would seem likely that there has been no great reliance on *McCarty*. Hardly had the ramifications of the decision been realized when Senator Jepsen introduced his Sen. Bill No. 1814, the precursor of the Act. The American Bar Association had called upon Congress by resolution of the House of Delegates to adopt legislation of a type that was eventually codified in the Act as early as 1969 and again in January 1982 (see letter to Congresswoman Patricia Schroeder, Congressional Record H4718 (daily ed. July 28, 1982)). Bills had been introduced in Congress dealing with the former spouse issue and hearings held on those bills in 1977, 1980, and 1981 (see Cong. Rec. H4717 (daily ed. July 28, 1982)). It must have been apparent to any observer of this issue that the treatment of military pensions was a subject in which Congress had taken more than a passing interest. It is hard to see how a service member can complain of our holding them to a standard of anticipating this particular change in the law since it does nothing but reestablish that which even our state Supreme Court thought had been established, i.e., the ability of the state courts to treat a military pension as an item of community property.

The question as to whether retroactive application of the Act could produce substantial inequitable results is the easiest to answer—the *nonapplication* of the Act would produce inequitable results.

---

[17]"In a recent article . . . Judge B. Abbot Goldberg maintains that the characterization of a federally created property right is exclusively a matter of federal law, and state law may not operate unless Congress specifically intended it to do so. *Free* [369 U.S. 663 (8 L.Ed.2d 180, 82 S.Ct. 1089)] and *Wissner* [338 U.S. 655 (94 L.Ed. 424, 70 S.Ct. 398)] make clear, however, that state law may determine the treatment accorded locally to a federally created property right so long as the result does not frustrate the express or implied purposes of the federal legislation. [Citation.]" *Fithian, supra,* 10 Cal.3d 592 at page 597, footnote 4.

Not to apply the Act retroactively to June 25, 1981, would yield far more problems than would any mechanical application of a calendar-determining set of laws. To allow cases decided, but not yet final, either before or during the relatively short interval of *McCarty* to be subject to the *McCarty* rule would carve out of the many persons entitled to military pensions a fortunate or unfortunate few who had substantial rights determined by the vagaries of the calendar. It would create a gap of some 20 months in which their future entitlements were or were not to be determined in a manner different from the 40 years before or the indefinite future after. Most importantly, it would allow the happenstance of the calendar to thwart the meaning of Congress when the Congress did quickly and affirmatively act to clearly and fully make these pension rights subject to the state's control. Indeed, not to apply the Act retroactively would be to thwart the very title of the Act, the "Uniformed Services Former Spouses' Protection Act."

It may be inferred from some express wording that Congress did intend the Act to supersede *McCarty*.[18] Section 1006(b) provides that 10 United States Code section 1408(d) only applies with respect to payments beginning on or after the effective date of the Act but without regard to the date of any court order.[19] The section further provides that in the case of court orders that became final before June 26, 1981, payments under that subsection may only be made in accordance with the order as in effect on such date and without regard to any subsequent modifications. These sections, however, appear to be of a mechanical nature only in determining the manner of payment, not the question of entitlement to payment. We have therefore an express statement of Congress that it will permit decisions and court orders that were made before the date of the *McCarty* decision to be binding upon the parties and to be subject to the provisions of the Act.

■ We hold, therefore, that the Act is retroactive to the date of the issuance of the decision in *McCarty,* that is, June 26, 1981, and is applicable to all cases not final as of the effective date of the Act, that is February 1, 1983. The prior decisions of this state relative to the treatment of military pensions as community property, as more fully set out in *Fithian, Brown* et al., will be controlling on all cases not yet final, whether they were filed before, on or after June 26, 1981.

In the case before us, the question of the community status of the husband's military pension was decided by the trial court in 1980. The military pension

[18]"Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C. § 1408(c)(1).)

[19]That subsection allows the secretary to make payments directly to a spouse for community property payments, provided the parties were married for at least 10 years during which the member was in the service.

was properly treated as community property under *Fithian.* This case not yet being final, we apply the law as it existed at the time of entry of judgment, disregarding the interim holding of *McCarty,* and therefore affirm the holding of the trial judge in considering the valuation of the pension in his determination of the community property of the parties.

## VALUATION OF THE COMMUNITY ASSETS

Husband contends that the trial judge committed error in his evaluation of the community assets. Wife testified as to the valuation of each of the assets of the community. These valuations were based upon her own observations; statements of Husband; appraisals and her testimony relative to these facts. Husband offered no proof or evidence at the time of trial on any of these assets. It was not until after judgment was rendered and he was dissatisfied with the figures handed down by the trial judge that Husband offered for the first time, in his motion for reconsideration to arrange for a valuation of the assets. Husband acknowledges that the general rule is that if a witness fails to introduce contrary evidence of the value of assets to rebut the evidence offered by the other party, he will not thereafter be in a position to challenge the court's determination. (*In re Marriage of Sparks* (1979) 97 Cal.App.3d 353, 356 [158 Cal.Rptr. 638].) It appears from the record before us that Wife thoroughly and adequately presented evidence to the trial judge concerning the valuation of each of the community assets. The trial judge accepted these valuations and made findings thereon. The trial court evidently believed the Wife. The testimony of a witness, even the party herself, may be sufficient. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) Viewing this evidence in the light most favorable to Wife, giving her the benefit of every reasonable inference, and resolving all conflicts in her favor, as we must under the rules of appellate review, we find that there was substantial evidence to support the trial court's findings as to the character and valuation of the community assets. (See *Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183], 6 Witkin, Cal. Procedure (2d ed. 1971) § 245, pp. 4236, 4237.)

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Lui, J., concurred.