[No. A028500. First Dist., Div. Three. Nov. 21, 1986.]

In re the Marriage of HYE-SUK and DONALD L. CARPENTER.
DONALD L. CARPENTER, Appellant, v.
HYE-SUK CARPENTER, Respondent.

**COUNSEL**

Bruce H. Schwartz for Appellant.

John P. McCall, Riede, Rosenberg, McCall & Cahill, and Richard F. Barry for Respondent.

**OPINION**

**SCOTT, Acting P. J.**—Donald Carpenter (husband) and Hye-Suk Carpenter (wife) executed a marital settlement agreement which included a provision confirming that husband's military retirement benefits were his separate property. The agreement was incorporated by reference into a final judgment of dissolution entered in September 1982. In July 1984, the trial court granted wife's request for division of those retirement benefits

pursuant to Civil Code section 5124.[1] Husband's principal contention in this appeal is that the application of section 5124 unconstitutionally impairs his contract rights. We disagree. Under other facts modification of a settlement agreement pursuant to section 5124 might result in an unconstitutional distortion of the parties' bargain. In this case, however, after carefully considering the agreement at issue, the record, and husband's contentions on appeal, we have concluded that modification was constitutionally reasonable.

I

It is necessary to consider the facts of this case in the now familiar context of the rise and demise of the ill-fated *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], in which the United States Supreme Court held that federal law precluded a state court from dividing military nondisability retirement pay pursuant to community property laws. (*Id.,* at pp. 223-236 [69 L.Ed.2d at pp. 600-608].) Prior to *McCarty,* it had been settled in this state for some time that a military pension was a community asset to the extent it was earned during marriage; therefore, it was divisible upon dissolution. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449]; see *Aloy* v. *Mash* (1985) 38 Cal.3d 413, 416 [212 Cal.Rptr. 162, 696 P.2d 656].)

The parties in this case were married in 1965. Throughout the 16 years and 3 months of their marriage, husband was on active duty with the United States military. *McCarty* was decided by the Supreme Court on June 26, 1981. Shortly thereafter the parties separated. On August 26, 1981, husband filed a petition for dissolution, alleging, inter alia, that his military pension was his separate property.

---

[1] By its own terms, Civil Code section 5124 has now self-destructed. It provided: "(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

"(b) Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986.

"(d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."

Trial was set for April 19, 1982. A settlement conference was held on April 15, and the case was dropped from the calendar as settled. In July 1982, the parties executed a marital settlement agreement in which husband's military retirement benefits were confirmed as his separate property. The agreement also provided for a "substantially equal" division of the parties' community property.

The agreement included provisions that it could not be altered except by a written instrument of the parties and that it could be submitted to the court for approval and made a part of any decree entered. It also provided, however, that it did not depend on court approval for its effectiveness.

The agreement was approved and incorporated by reference into an interlocutory and final judgment of dissolution entered on September 3, 1982. Neither party appealed from the judgment.

In the meantime, the legislative and judicial branches, both state and federal, were cooperating in a "massive and largely successful drive to make *McCarty* disappear—prospectively, presently, and retroactively." (*Aloy* v. *Mash, supra,* 38 Cal.3d at pp. 421-422, and fn. 7.) The reaction of Congress to *McCarty* was particularly swift. Legislation was introduced as early as the fall of 1981 to negate *McCarty*'s impact. (See generally, *In re Marriage of Hopkins* (1983) 142 Cal.App.3d 350, 355-359 [191 Cal.Rptr. 70].) In September 1982, Congress enacted Public Law No. 97-252, title X, entitled "Federal Uniformed Services Former Spouses' Protection Act" (FUSFSPA). Section 1408(c)(1) of FUSFSPA [10 U.S.C. § 1401 et seq.] provides: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable *to* a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." This section became effective February 1, 1983. (U.S. Pub.L. No. 97-252 (Sept. 8, 1972) § 1006, 96 Stat. 737.)

As our Supreme Court has noted, in this state "Courts of Appeal with rare unanimity, seized on FUSFSPA to obliterate all traces of *McCarty*" with respect to cases not yet final. (*Aloy* v. *Mash, supra,* 38 Cal.3d at p. 421, fn. 7) In numerous cases in which an appeal was pending when FUSFSPA became effective, it was held that Congress intended that act to apply retroactively. (*In re Marriage of Buikema* (1983) 139 Cal. App.3d 689, 691 [188 Cal.Rptr. 856]; ["legislative history clearly indicates Congress' intent to abrogate all applications of the *McCarty* decision"]; *In re Marriage of Frederick* (1983) 141 Cal.App.3d 876, 879 [190 Cal.Rptr. 588] ["legislative intent that the law relative to community property treatment of military retirement pensions [is] as though *McCarty* did not exist. . ."; *In re*

*Marriage of Hopkins, supra,* 142 Cal.App.3d 350, 356-360; *In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 427-428 [190 Cal.Rptr. 885]; *In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833, 836-837 [191 Cal.Rptr. 292]; *In re Marriage of Sarles* (1983) 143 Cal.App.3d 24, 26-30 [191 Cal.Rptr. 514]; *In re Marriage of Fairfull* (1984) 161 Cal.App.3d 532, 535 [207 Cal.Rptr. 523].)

For those whose judgments became final during the gap between the date of *McCarty* and the effective date of FUSFSPA, the California Legislature enacted Civil Code section 5124, authorizing modification of a community property settlement, judgment, or decree which became final on or after June 25, 1981, and before February 1, 1983, to include a division of military retirement benefits payable on or after the latter date.

In the instant case, in December 1983, wife sought an order dividing husband's military retirement benefits pursuant to section 5124. In support of her application, she submitted a declaration stating in part that she had entered into the agreement awarding husband his retirement pay as his separate property only because she was informed by her attorney that the *McCarty* decision precluded her from claiming any interest in that pay. Husband's memorandum in opposition to the motion argued that application of section 5124 would be an unconstitutional impairment of contract, would deprive him of a vested right without due process, and would deny him equal protection.

After a hearing at which the court heard argument by counsel, it rejected husband's constitutional arguments and granted the motion to divide the military retirement benefits as of September 3, 1982, the effective date of the interlocutory decree.[2]

## II

▮ Retroactive application of a statute may be unconstitutional if it deprives a person of a vested right without due process of law or impairs the obligation of a contract. (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].) The principal question in this appeal is whether section 5124, which is retrospective in effect on its face, impairs contract obligations in violation of article I, section 10 of the United States Constitution and article I, section 9 of the California Constitution.

▮ While these provisions of the federal and state Constitutions appear to prohibit absolutely *any* impairment of contract, it is well settled that

---

[2]Notwithstanding that order, wife now concedes that her entitlement is limited to her share of the benefits payable on or after February 1, 1983. (§ 5124, subd. (a).)

neither is to be read literally. " 'It is the settled law. . . that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' " (*Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234, 241 [57 L.Ed.2d 727, 734, 98 S. Ct. 2716]; accord *City of Torrance* v. *Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371, 376-377 [185 Cal.Rptr. 645, 650 P.2d 1162].)

■ There are constitutional limits on a state's power to abridge existing contractual relationships, however, even in the exercise of its legitimate police power. (*Allied Structural Steel Co.* v. *Spannaus, supra,* 438 U.S. at p. 242 [57 L.Ed.2d at p. 734].) The threshold inquiry in an impairment of contract claim is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. (*Energy Reserves Group* v. *Kansas Power & Light* (1983) 459 U.S. 400, 411 [74 L.Ed.2d 569, 580-581, 103 S.Ct. 697]; *City of Torrance* v. *Workers' Comp. Appeals Bd., supra,* 32 Cal.3d at p. 377.) Among factors to be considered in assessing the severity of the impairment are whether the parties have relied on the preexisting contract right and the extent to which the legislation violates their reasonable expectations. Whether the legislation is in a previously regulated area should also be considered. (*Mobil Oil Corp.* v. *Rossi* (1982) 138 Cal.App.3d 256, 263-264 [187 Cal.Rptr. 845].)

If the law constitutes a substantial impairment, the state must, in justification, have a "significant and legitimate public purpose behind the regulation, [citation], such as the remedying of a broad and general social or economic problem." (*Energy Reserves Group* v. *Kansas Power & Light, supra,* 459 U.S. at pp. 411-412 [74 L.Ed.2d at pp. 580-581].)

Finally, once a legitimate public purpose has been identified, the question is whether the adjustment of the " 'rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.' " (*Id.,* at p. 412 [74 L.Ed.2d at p. 581].) "[A]n impairment may be constitutional if it is reasonable and necessary to serve an important public purpose." (*United States Trust Co.* v. *New Jersey* (1977) 431 U.S. 1, 25 [52 L.Ed.2d 92, 112, 97 S.Ct. 1505].) Among the factors to be considered in evaluating the importance of the public purpose and whether that purpose justifies the

impairment is whether the law is "appropriately tailored and limited to the situation necessitating its enactment." (*Donlan* v. *Weaver* (1981) 118 Cal.App.3d 675, 682 [173 Cal.Rptr. 566].) Unless the state itself is a contracting party, courts should defer to legislative judgment as to the necessity and reasonableness of legislation. (*Energy Reserves Group* v. *Kansas Power & Light, supra,* 459 U.S. at pp. 412-413 [74 L.Ed.2d at pp. 581-582].)

■ The foregoing analysis mirrors that required when the claim is that retroactive legislation contravenes vested property rights without due process. In such a case, the constitutionality of the legislation also depends on whether it can reasonably be believed to be sufficiently necessary to the public welfare to justify the impairment. (See, e.g., *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].)

In *Bouquet,* at issue was whether retroactive application of legislation making postseparation earnings of both husband and wife separate property resulted in an unconstitutional deprivation of wife's vested property rights. Prior law had characterized wife's postseparation earnings as separate property, but husband's earnings during the same period were community. The court pointed out that vested property rights were not immutable, and that the state could constitutionally interfere with such rights if reasonably necessary to protect the health, safety, morals, and general well being of the people. (*Ibid.*) The court then enumerated several factors to be considered in determining whether a retroactive law violates the due process clause: ". . . the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*Ibid.*)

The court concluded that the state's paramount interest in the equitable distribution of marital property upon dissolution justified the impairment of the wife's vested property rights. It commented that the legislation at issue sprang from an "appreciation of the rank injustice of the former law" (*id.,* at p. 594), which had "blatantly discriminated" against the husband during periods of separation. (*Id.,* at p. 588.) The court thought it doubtful that there was any rational relation between that unequal treatment and any legitimate state interest. (*Ibid.*) Furthermore, the unfairness of the former law "casts doubt upon the legitimacy of reliance upon it." (*Id.,* at p. 594, fn. 11.)

■ In sum, *In re Marriage of Bouquet* stands for the proposition that "the state's paramount interest in the equitable dissolution of the marital

partnership justifies legislative action abrogating rights in marital property where those rights derive from manifestly unfair laws." (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761.)

The constitutionality of section 5124 was first considered in *Mueller v. Walker* (1985) 167 Cal.App.3d 600 [213 Cal.Rptr. 442]. In *Mueller,* husband's military pension had been awarded to him in a judgment of dissolution which became final in October 1982, after *McCarty* but before FUSFSPA became effective. Wife later filed an action seeking division of the pension, but the trial court sustained a demurrer without leave to amend and dismissed on res judicata grounds. The appellate court reversed, holding that section 5124 clearly authorized the relief sought. (*Id.,* at p. 607.)

The *Mueller* court then rejected husband's argument that section 5124 was unconstitutional because it authorized a taking of property without due process. The court assumed arguendo that the legislative negation of the finality of the judgment amounted to a taking. Relying heavily on *In re Marriage of Bouquet, supra,* 16 Cal.3d 583, it concluded that the state's " 'paramount interest' in the equitable distribution of marital property upon dissolution of the marriage points to section 5124 as proper exercise of the police power." The court added that section 5124 supplemented and carried into effect Congressional intent to " 'abrogate all applications of the *McCarty* decision.' " (*Id.,* at p. 609.) In its analysis, the court did not expressly condemn the *McCarty* decision itself as a "manifestly unfair" law. (See *In re Marriage of Buol, supra,* 39 Cal.3d at p. 761.) Nevertheless, it emphasized that Congress intended to nullify *McCarty* and the California Legislature intended to eliminate the possibility that a spouse's recovery of a community interest in a pension would be barred simply because the case by chance fell into the gap between *McCarty* and the effective date of the FUSFSPA. (*Mueller, supra,* 167 Cal.App.3d at p. 609.)[3]

 In a case such as *Mueller,* where the property issues have been decided by the trial court and not by agreement such as this case, presum-

---

[3]The Second District considered section 5124 in *In re Marriage of Van Dyke* (1985) 172 Cal.App.3d 145 [218 Cal.Rptr. 11]. In that case, wife and husband entered into a marital settlement agreement effective in early 1982 providing that husband's pension was his separate property. The interlocutory judgment of dissolution was entered in January 1983, which incorporated the settlement; final judgment of dissolution was entered in May 1983. Husband argued that section 5124 was inapplicable because final judgment was entered beyond the window period provided in the statute. The appellate court disagreed and held that community property settlements subject to modification pursuant to section 5124 were those valid settlements entered into between the designated dates, regardless of when or whether the agreements were incorporated into a subsequent judgment or decree. (*Id.,* at pp. 148-150.) In a footnote, however, the court stated that the parties had not raised and it did not address whether modification would be precluded by the constitutional prohibitions against impairment of contract, due process guarantees, or principles of res judicata. (*Id.,* at p. 150, fn. 2.) The court did not mention *Mueller v. Walker, supra,* 167 Cal.App.3d 600.

ably that court has made an equal division of the couple's community property, as is required by law. (Civ. Code, § 4800, subd. (a); *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 748 [131 Cal.Rptr. 873, 552 P.2d 1169]; Cal. Rules of Court, rule 1242.) Modification of the final judgment to include a division of pension benefits is consistent with that equal division and is therefore reasonable. Husband does not disagree with *Mueller,* but argues that section 5124 is not similarly reasonable when applied to cases involving property agreements.

Recently, however, in *In re Marriage of Potter* (1986) 179 Cal.App.3d 73 [224 Cal.Rptr. 312], the court considered section 5124 in the context of a stipulated judgment and found it constitutional. About four months after *McCarty* was decided, the parties in *Potter* entered into a stipulation recited orally in court and later reduced to writing in an interlocutory judgment. The stipulated judgment confirmed husband's military retirement benefits to him as his separate property. In 1983, wife sought modification of the judgment pursuant to section 5124. The trial court denied the motion on constitutional grounds, but the appellate court reversed.

First, it agreed with the *Mueller* court that section 5124 does not unconstitutionally interfere with vested property rights. (*Potter, supra,* 179 Cal.App.3d at pp. 80-82.) Next, but without analyzing the provisions of the particular stipulated judgment at issue, the court "by parity of reasoning" held that section 5124 does not violate the contract clause of either the federal or the state Constitutions. (*Id.,* at p. 83.) The court reasoned that the state's paramount interest in the equitable distribution of marital property on dissolution clearly outweighs the interference with contract rights. The court described section 5124 as "appropriately tailored and limited to the situation necessitating its enactment" and noted that the statute provides relief only for a limited time, as it is repealed by its own terms on January 1, 1986. (*Potter, supra,* at p. 84.)

We consider the court's conclusion in *Potter* to be overbroad. We agree with the court in *In re Marriage of Doud* (1986) 181 Cal.App.3d 510 [226 Cal.Rptr. 423] that the resolution of a challenge to the constitutionality of section 5124 on impairment of contract grounds requires an examination of the particular agreement at issue. (*Id.,* at p. 519.) For many reasons, husband and wife may agree to an unequal division of property. (See *In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 494 [97 Cal.Rptr. 274].) A spouse's acceptance of one term of an agreement may be based on a concession by the other spouse with respect to another issue, or on some fact or intangible which is not at all apparent from the face of the agreement.

Under certain circumstances, modification pursuant to section 5124 might be a drastic distortion of the bargain actually made by the parties.[4]

██ In this case, however, our examination of the record has persuaded us that as applied to the facts of this case, section 5124 does not unconstitutionally impair husband's contract rights. The *Mueller* court stated that, given the brief life of the *McCarty* decision, no subtle balancing was necessary to conclude that the state's predominant interest in the equitable division of marital property upon dissolution justified modifying a final judgment to divide the husband's military retirement benefits. (*Mueller, supra,* 167 Cal.App.3d at pp. 607-609.) While the instant case involves a settlement agreement incorporated into a final judgment, nothing in the record tips the balance toward a different result here. For example, husband offered no evidence of any actions taken in reliance on the settlement agreement. (Cf. *Allied Structural Steel Co.* v. *Spannaus, supra,* 438 U.S. 234 [record established that company that relied on terms of employment contract to calculate its contributions to pension trust fund for 10 years before legislation at issue enacted].)

Furthermore, this is not a case in which the parties agreed to an unequal division of property because of the award of the pension to husband. The parties stipulated to a "substantially equal" division of their community property. There was no evidence before the trial court that modification would result in a substantial unequal division of the remainder of the marital property, and husband makes no such claim on appeal.[5] (Cf. *In re*

---

[4]Recognizing that problem, the majority in *In re Marriage of Doud, supra,* 181 Cal.App.3d 510 held that the trial court has discretion to condition modification pursuant to section 5124 on the moving party's agreement to do equity. If the nonmoving party establishes by declaration or other evidence that modification would result in a substantial unequal division of the remainder of the marital property, the trial court may condition the grant of modification upon agreement of the moving party to reopen the remainder of the settlement. According to the *Doud* court, the trial court's equitable discretion in this matter is reviewable on appeal for abuse. (*Doud, supra,* 181 Cal.App.3d at pp. 524-526.)

As we will discuss, we have concluded that in the instant case modification pursuant to section 5124 does not unconstitutionally impair husband's contract rights. Thus we need not consider the merits of the *Doud* court's analysis.

[5]We have not overlooked the fact that in his declaration in opposition to wife's motion, husband stated that he waived his community interest in wife's retirement benefits as he was receiving his retirement benefits as his separate property. At the hearing on wife's motion, apparently in response to that declaration, wife's attorney compared the substantial value of husband's fully matured military pension with the small value of wife's pension which he said was only $1,100. He offered a stipulation to divide her pension as part of the proceeding. Husband's counsel did not respond to the offer. Later in the hearing, the court asked whether the whole case should be reopened if it concluded that the statute passed "constitutional muster." Husband's counsel's initial response was that the property division should be reopened because of husband's waiver of his interest in wife's retirement benefits, but husband's counsel then stated, "In any event, what she received in no way balanced what she gave up." The court's order dividing the military pension does not mention wife's pension *and husband does not seek its division in this appeal.*

*Marriage of Doud, supra,* 181 Cal.App.3d at pp. 522-525.) Instead, husband argues that the support provisions of the agreement will be thrown into disarray by granting of wife's motion, but the agreement expressly provides that family support is modifiable by either party both as to amount and duration. Under all the circumstances, modification of this judgment to include a division of the military pension benefits is constitutionally reasonable.

In reaching our conclusion, we have not overlooked *In re Marriage of Downes* (1986) 177 Cal.App.3d 205 [222 Cal.Rptr. 776]. In *Downes,* the parties stipulated to a judgment of dissolution which confirmed husband's pension as his separate property. Wife's subsequent motion for division of the pension was granted, but the appellate court reversed. First, it held that section 5124 is discretionary and that modification is impermissible if the result would be inequitable. (*Id.,* at pp. 209-210.) It then declared that the Legislature intended to grant relief only to those who mistakenly treated pensions as separate property because of *McCarty.* If parties who have stipulated to judgment have treated a pension as community despite *McCarty* and bargained to eliminate the risk that Congress would overturn that case, it would be an abuse of discretion for the trial court to grant a section 5124 motion. (*Id.,* at pp. 211-212.)

The record in *Downes* was in conflict on how the parties treated the pension. Wife claimed that in negotiating the agreement, she considered the pension as husband's separate property because of *McCarty.* Husband claimed that they executed the agreement assuming the pension was community and that he waived his rights to other community property and spousal support because of the agreement to award him the pension. Because of the conflict, the appellate court remanded for a factual finding on that issue. (*Ibid.*)

In this case, there is no similar conflict in the record. Wife's declaration that she entered into the agreement because she was informed by counsel that *McCarty* precluded her from claiming an interest in the pension is uncontradicted. Husband has made no claim either at trial or before this court that the parties assumed his pension was community when they entered into their agreement. *Downes* is inapposite here.

### III

Husband also contends that application of section 5124 is a denial of equal protection. He argues that section 5124 discriminates against persons such as himself "who have as their separate property military retirement benefits by operation of marital settlement agreements which were merged into judgments final during the period stated" in section 5124, in

contrast to "all other persons who are similarly situated except for the date during which the judgment was final." In addition, husband complains that persons in his classification are treated unequally when compared with any person who has a final judgment which incorporates any kind of contract.

 In order to withstand an equal protection challenge, ordinarily a legislative classification need only bear a rational relationship to a conceivable legitimate state purpose. (*Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 162-164 [211 Cal.Rptr. 368, 695 P.2d 665]; *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798-799 [187 Cal.Rptr. 398, 654 P.2d 168].) The state's interest in the equitable division of community property clearly justifies the classification created by section 5124. Husband cites no authority which supports his theory that the right to contract is a fundamental interest for purposes of equal protection analysis, triggering the need for strict scrutiny of the classification.

Wife requests attorney fees on appeal. That request is more appropriately directed to the trial court. (See *In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856].)

The judgment is modified to provide that wife's entitlement to her community interest in husband's military retirement benefits is limited to her interest in benefits payable on or after February 1, 1983. As modified, the judgment is affirmed. Wife to recover her costs.

Barry-Deal, J., and Merrill, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 4, 1987.