[S.F. No. 25124. Oct. 29, 1987.]

In re the Marriage of MARIE GARCIA and MICHAEL J. BARNES.
MARIE GARCIA BARNES, Appellant, v.
MICHAEL J. BARNES, Respondent.

**COUNSEL**

Richards, Watson & Gershon, Mitchell E. Abbott and Donald Stern for Appellant.

William M. Monroe and Phyllis Green for Respondent.

**OPINION**

**PANELLI, J.**—This case involves Civil Code section 5124, which authorized courts to reopen marital dissolution judgments entered between June 26, 1981, and January 31, 1983, to divide military retirement benefits

pursuant to community property laws.[1] In the present case, the Court of Appeal affirmed the trial court's ruling that section 5124 was unconstitutional. Its holding conflicts with a number of Court of Appeal decisions that have upheld the constitutionality of section 5124.[2] (See, e.g., *In re Marriage of Carpenter* (1986) 188 Cal.App.3d 604 [231 Cal.Rptr. 783]; *In re Marriage of McDonough* (1986) 183 Cal.App.3d 45 [227 Cal.Rptr. 872]; *In re Marriage of Doud* (1986) 181 Cal.App.3d 510 [226 Cal.Rptr. 423]; *In re Marriage of Castle* (1986) 180 Cal.App.3d 206 [225 Cal.Rptr. 382]; *In re Marriage of Potter* (1986) 179 Cal.App.3d 73 [224 Cal.Rptr. 312]; *Mueller* v. *Walker* (1985) 167 Cal.App.3d 600 [213 Cal.Rptr. 442].) We reverse.

## I.  FACTS

Husband and wife separated in April 1981 after husband had already retired from the military and was receiving military retirement pay. At the time of separation it appeared settled that military retirement benefits were community property under California law. (*In re Marriage of Milhan* (1980) 27 Cal.3d 765 [166 Cal.Rptr. 533, 613 P.2d 812].) On June 26, 1981, however, the United States Supreme Court held that such benefits were the military spouse's separate property under the federal military retirement scheme and could not be treated as community property under state law. (*McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].)

The interlocutory judgment, entered on March 23, 1982, awarded husband's military retirement benefits to him as his separate property. Final judgment was entered on April 15, 1982. Neither party appealed.

In the meantime, Congress had begun considering legislation to negate the effect of *McCarty*. In September 1982, Congress enacted the Federal

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] Section 5124, which by its terms has already expired, provided as follows: "(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

"(b) Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986.

"(d) This section shall remain in effect only until January 1, 1986, and on that date is repealed unless a later enacted statute which is chaptered before that date deletes or extends that date."

Uniformed Services Former Spouses' Protection Act (FUSFSPA; 10 U.S.C. § 1401 et seq.). Section 1408(c)(1) of FUSFSPA provides, with certain limitations, that a court may treat retirement pay payable to a member after June 25, 1981, as community property under state law. This section became effective February 1, 1983. (See *In re Marriage of Carpenter, supra,* 188 Cal.App.3d at p. 609.)

We described the effect of FUSFSPA in *Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421-422, footnote 7 [212 Cal.Rptr. 162, 696 P.2d 656]: "Courts of Appeal, with rare unanimity, seized on FUSFSPA to obliterate all traces of *McCarty.*" In numerous cases in which an appeal was pending when FUSFSPA became effective, it was held that Congress intended that act to apply retroactively. (*In re Marriage of Buikema* (1983) 139 Cal.App.3d 689 [188 Cal.Rptr. 856]; *In re Marriage of Frederick* (1983) 141 Cal.App.3d 876 [190 Cal.Rptr. 588]; *In re Marriage of Hopkins* (1983) 142 Cal.App.3d 350 [191 Cal.Rptr. 70]; *In re Marriage of Fransen* (1983) 142 Cal.App.3d 419 [190 Cal.Rptr. 885]; *In re Marriage of Ankenman* (1983) 142 Cal.App.3d 833 [191 Cal.Rptr. 292]; *In re Marriage of Sarles* (1983) 143 Cal.App.3d 24 [191 Cal.Rptr. 514]; *In re Marriage of Fairfull* (1984) 161 Cal.App.3d 532 [207 Cal.Rptr. 523].)

"This pretty much reduced the impact of *McCarty* to judgments which became final between June 25, 1981, the date of that decision, and February 1, 1983, the effective date of FUSFSPA. The few unfortunate nonmember spouses, whose judgments did become final between those dates, were given special permission by the California Legislature to ask that the judgments be modified 'to include a division of military retirement benefits payable on or after February 1, 1983, . . .' (Civ. Code, § 5124, added by Stats. 1983, ch. 775, § 1, p. 2853.)" (*Aloy* v. *Mash, supra,* 38 Cal.3d at pp. 421-422, fn. 7.)

In February 1984, wife requested a modification of the judgment to include division of husband's military retirement benefits under section 5124. The trial court denied the motion, ruling that section 5124 was unconstitutional. Wife appealed.

## II. COURT OF APPEAL OPINION

The Court of Appeal affirmed, with Justice Crosby dissenting. The majority expressly disagreed with the other Court of Appeal decisions holding that Congress intended to allow FUSFSPA to be applied to final judgments during the window period between the filing of *McCarty* and the effective date of FUSFSPA. The Court of Appeal majority then concluded that since

Congress had not expressly invalidated *McCarty* retroactively, section 5124 violated the supremacy clause of the federal Constitution.

## III. Discussion

■ The Court of Appeal's reasoning, in our view, is untenable. It is clear that Congress intended FUSFSPA to apply retroactively to permit community property treatment of retirement benefits in judgments entered during the *McCarty* window period. We agree with the line of Court of Appeal cases that have upheld section 5124 and find Justice Blease's reasoning in *In re Marriage of Doud, supra,* 181 Cal.App.3d 510, particularly apt: "Congress responded [to *McCarty*] with the Federal Uniformed Services Former Spouses' Protection Act (FUSFSPA), effective February 1, 1983. (10 U.S.C. § 1408.) It provides that 'a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.' (10 U.S.C. § 1408 (c)(1).) FUSFSPA explicitly authorizes a state to apply its marital property laws to retirement benefits *payable after* June 26, 1981, and before its effective date.

"The committee report accompanying the measure says: 'The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal preemption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible.' (Pub.L. No. 97-252 (Sept. 8, 1982) 96 Stats. 730, 1982 U.S. Code Cong. & Admin. News, p. 1161.) On June 26, 1981, California law measured the interests of the spouses in the amounts payable, including those interests preceding that date, by reference to the duration of the marriage. Thus FUSFSPA sanctions the retroactive recognition of such events.

"It is unmistakable that FUSFSPA is meant to remove (with exceptions not pertinent here) the federal preemption discerned in *McCarty* as of the date of *McCarty's* promulgation. When a federal statute overrides a state statute under the supremacy clause 'the repeal of the federal statute reinstates or revives the state law without an express reenactment by the state legislature.' (Fn. omitted.) (1A Sutherland, Statutory Construction (4th ed. 1985 rev.) § 23.21, p. 390; see, e.g., *Boedefeld* v. *Reed* (1880) 55 Cal. 299.) 'The result is the same regardless of whether the federal statute is repealed or its repealing effects on state law are expressly rescinded by other

congressional action.' (1A Sutherland, *supra,* p. 392, fn. 9 and cases cited therein.) Accordingly, under FUSFSPA the application of California's community property law was revived and became operative on June 26, 1981.

"However, the California law of finality of judgments operated to insulate the application of the community property laws to cases which became final by virtue of judgments and stipulations consummated during the period between *McCarty* and FUSFSPA. (See *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17 [176 Cal.Rptr. 274]; *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 [177 Cal.Rptr. 380].) To redress this anomaly the Legislature enacted section 5124. It provides that '[c]ommunity property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.' (Stats. 1983, ch. 775, § 1, eff. Jan. 1, 1984, through Jan. 1, 1986.)

"This change in the law of finality of judgments is within the power of the Legislature, subject to the constraints of the federal and state constitutions. FUSFSPA removed the statutory bar of federal preemption to the exercise of California's power to adopt section 5124. . . ." (*In re Marriage of Doud, supra,* 181 Cal.App.3d at pp. 517-518.)

■ There is also no due process bar to application of section 5124. ■ As we noted in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], retroactive application of a statute may violate a party's due process rights if it deprives him or her of a vested property right without sufficient justification. ■ The police power, however, allows the state to impair vested rights when considered reasonably necessary to the protection of the health, safety, morals, and general well-being of the people. ■ In determining whether there is a due process violation, we must consider, inter alia, the significance of the state interest served and the importance of retroactive application to effectuate that interest. (*Id.* at p. 592; see also *In re Marriage of Buol* (1985) 39 Cal.3d 751, 760-761 [218 Cal.Rptr. 31, 705 P.2d 354].)

■ Section 5124 is a clear expression of legislative intent that recovery of a community property interest in a military pension should not be barred simply because the case fell by chance into the 18-month gap between the effective dates of FUSFSPA and the *McCarty* decision. (*Mueller* v. *Walker, supra,* 167 Cal.App.3d at p. 609.) No subtle balancing is required to conclude that the statute is a proper exercise of the police power. As in *Bouquet,* the state's interest in remedying the "rank injustice" of the situation

and in achieving an equitable dissolution of the marital relationship justifies such retroactive application. (*In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 594.)

■ Although the record is unclear, it appears that the property division in the judgment was pursuant to an agreement reached by the parties. This would implicate the state and federal protection against impairment of contracts which, of course, is not absolute. (See *In re Marriage of Potter, supra,* 179 Cal.App.3d at pp. 82-83.) ■ Whether a contract is impaired in the constitutional sense depends upon the public interest in, and the reasonableness and necessity of, the legislative action. Thus, the analysis is similar to that involved in the determination of whether a retroactive statute violates due process by impermissibly impairing vested rights. (*In re Marriage of Doud, supra,* 181 Cal.App.3d at p. 520.) ■ For the same reasons that section 5124 does not violate the due process clause, it does not violate the contract clause.

This does not mean, however, that husband would be without recourse if the award of the pension to him had been in exchange for his agreement to an unequal division of the community property. Section 5124 gives the trial court discretion to deny modification on equitable grounds under such circumstances. It would also allow the court to condition the grant of modification upon agreement of the moving party to do equity. (See *In re Marriage of Doud, supra,* 181 Cal.App.3d at pp. 524-525; *In re Marriage of Carpenter, supra,* 188 Cal.App.3d at pp. 614-615.)

## IV. DISPOSITION

The judgment of the Court of Appeal is reversed with directions to remand the cause to the trial court for further proceedings consistent with the views set forth herein.

Lucas, C. J., Mosk, J., Broussard, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.