[No. D009693. Fourth Dist., Div. One. May 10, 1990.]

In re the Marriage of AUDRIAN and JOHN WALTERS.
AUDRIAN WALTERS, Respondent, v.
JOHN WALTERS, Appellant.

**COUNSEL**

Sharron Voorhees and Joan M. Bates for Appellant.

Ravreby & Shaner, Richard R. Ravreby, Diane Gibson and Ramon D. Asedo for Respondent.

## OPINION

**KREMER, P. J.**—John appeals an order reinstating Audrian's community property interest in his military retirement pension.[1] John contends the court acted in excess of its jurisdiction. John also contends any reinstatement of Audrian's community interest in the pension should have been accompanied by termination of her support rights and reinstatement of her obligation to make payments on a promissory note she gave John for his community interest in their residence. We affirm the order insofar as it reinstates Audrian's community interest in John's pension. We remand the matter to the superior court for further proceedings on the issues of spousal support and payment of the promissory note.

## I

### FACTS

In 1948 John entered the Air Force.

In 1951 the parties married.

In 1968 John retired from the Air Force.

In 1977 the parties separated.

In 1978 the court entered interlocutory judgment dissolving the parties' marriage. The court awarded Audrian the parties' residence. The court ordered John to pay child support for the parties' two minor children until they reached majority. The court also ordered John to pay Audrian $450 monthly spousal support until further order, Audrian's remarriage or the death of either party.

In accord with the parties' stipulation Audrian had a 44 percent interest in John's military retirement pension, the interlocutory judgment provided John would pay Audrian "a sum equal to 44% of his gross monthly military retirement, payable on the first day of each and every month until the death of [John], with the first payment commencing at such time as the youngest living minor child of the parties hereto becomes emancipated . . . ." The interlocutory judgment further provided "for each month [John] complies with any current and existing order as and for child support and spousal support and until the emancipation of the youngest living minor child of the parties hereto, [Audrian's] community interest in and to

---

[1] For purposes of clarity, we refer to the parties by their first names.

[John's] said military retirement will be deemed paid for that month." The court reserved "jurisdiction in this proceeding over [John's] military retirement and [Audrian's] interest therein to enforce any orders herein made and to respond to future changes in the law."

In accord with the parties' stipulation, the interlocutory judgment also provided John's "community interest in and to the real property [residence] is in the amount of $25,000.00; [Audrian] will execute a Promissory Note and Trust Deed, bearing interest at the rate of eight per cent (8%) per annum, in the approximate sum of $25,000.00 consistent with other orders herein, payable on or after the emancipation of the youngest living minor child of the parties hereto, in a monthly amount equal to one-half (1/2) of [Audrian's] then community interest in and to [John's] gross retirement each month until said note is paid in full."

On June 26, 1981, the United States Supreme Court decided *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] precluding state domestic courts from treating military retirement benefits as community property.

On July 25, 1981, the parties' youngest child reached majority.

On July 29, 1981, John filed an order to show cause to terminate Audrian's spousal support and her interest in his military retirement benefits. In January 1982 the court heard and took under submission John's order to show cause.

In February 1982, citing *In re Marriage of Jacanin* (1981) 124 Cal.App.3d 67 [177 Cal.Rptr. 86], the court in writing stated it was "required to rule that [Audrian] is no longer entitled to receive any portion of [John's] military pension." The court also stated Audrian was not required to make payments under her note to John during the time she did not receive any portion of his pension. The court stated John's monthly spousal support obligation to Audrian should remain at $450.

In September 1982 the court entered a written order on John's July 1981 order to show cause. The court denied John's motion to terminate spousal support and ordered John to continue paying $450 monthly spousal support until further order, Audrian's remarriage or either party's death. The court found John's military retirement pension was his separate property. The court also found Audrian was presently not entitled to any interest in the pension. The order provided Audrian's promissory note to John should be paid upon sale, exchange or substantial refinancing of the residence; the court made a conforming modification to the interlocutory judgment. The

order also provided "the Court reserves jurisdiction over said military retirement to respond to any future changes in the present state of the law through the judiciary or the legislature." John's attorney approved the order as to content and form.

## II

### CHALLENGED SUPERIOR COURT PROCEEDINGS

Responding to *McCarty* v. *McCarty, supra,* 453 U.S. 210, Congress enacted the federal Uniformed Services Former Spouses' Protection Act (FUSFSPA). Effective February 1, 1983, FUSFSPA permitted states to treat military retirement pay as either the military member's separate property or as community property.

On April 27, 1988, Audrian filed an order to show cause to modify the interlocutory judgment. Audrian asked the court to find she was entitled to 44 percent of John's military retirement pension and order payment of such amount. Audrian also sought assertedly due pension arrearages. Audrian stated John was entitled to credit each month for the $450 paid to her. Audrian also asserted the residence was on the market for sale. She asked the court to order John after close of escrow to pay her 44 percent of his retirement in lieu of spousal support and to reserve jurisdiction over further spousal support.

Opposing Audrian's order to show cause, John asserted Audrian's request for modification was untimely under Civil Code section 5124, subdivision (c)[2]

---

[2] Civil Code section 5124, added by Statutes 1983, chapter 775, section 1, provided in relevant part:

"(a) Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

"(b) Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date the property settlement, judgment, or decree became final, divisible community property.

"(c) Any proceeding brought pursuant to this section shall be brought before January 1, 1986."

All statutory references are to the Civil Code unless otherwise specified.

In August 1988 after hearing, the court granted Audrian's request to reinstate her community interest in John's retirement.[3] The court did not expressly rule on the issues of spousal support or the promissory note. John appeals.

## III

### DISCUSSION

John contends the court lacked jurisdiction to reinstate Audrian's community property interest in his pension. John also contends even if reinstatement of such interest was proper, the court erred in not also terminating Audrian's right to spousal support and reinstating her monthly obligation to John under the promissory note. We conclude the court properly reinstated Audrian's interest in John's pension. We remand the matter for further proceedings on the issues of spousal support and the promissory note.

### A

### AUDRIAN ENTITLED TO COMMUNITY INTEREST IN PENSION

John contends the court in 1988 lacked jurisdiction to entertain Audrian's request for reinstatement of her community property rights. John bases that contention on two grounds. First, John asserts the controlling order arising from the January 12, 1982, hearing was the court's February 5, 1982, written statement not containing a reservation of jurisdiction over the pension. John claims the court improperly relied on the September 23, 1982, order which reserved jurisdiction. Second, John contends Audrian's request was untimely under section 5124, subdivision (c). We reject John's contentions.

### 1

### THE COURT IN 1982 RESERVED JURISDICTION OVER JOHN'S PENSION

■   In January 1982 the court heard and took under submission John's order to show cause—triggered by *McCarty* v. *McCarty, supra,* 453 U.S. 210—to terminate Audrian's interest in his military retirement pension. In February 1982 the court in writing stated its intended decision on the

---

[3]The court did not award Audrian any pension arrearages. Finding Audrian's delay in seeking reinstatement of her pension interest constituted laches, the court made such reinstatement effective April 27, 1988, the date Audrian filed her motion.

matter taken under submission. In September 1982 the court entered a formal written order on the matter terminating Audrian's interest in the pension. The September 1982 order provided "the Court reserves jurisdiction over said military retirement to respond to any future changes in the present state of the law through the judiciary or the legislature." John's attorney approved the September 1982 order as to content and form. In granting Audrian's 1988 request to reinstate her interest in John's pension, the court stated the September 1982 order's language reserving jurisdiction over the pension granted Audrian an "unlimited right" to reinstate her interest.

Asserting the February 1982 document signed by the court was the controlling order, John contends the court in September 1982 lacked jurisdiction to modify such document without appropriate notice. Thus, according to John, the September 1982 order and the challenged 1988 order based on the September 1982 order are both void. Further, according to John, because the February 1982 document contained no reservation of jurisdiction over the pension and because Audrian's 1988 motion was untimely under section 5124, as a matter of law Audrian has no right to reinstatement of any interest in John's pension. However, John's contentions are belied by reasonable interpretation of the record.

Although the February 1982 document signed by the court states "[a]ll orders herein are retroactive," the document simply constitutes a memorandum of reasons for the court's intended decision. The February 1982 document contains no title caption and no signatures by counsel. However, the September 1982 document is formally entitled an order of the court, signed by the court, and approved by John's counsel as to content and form. The September 1982 order also contains a paragraph continuing the proceeding for further court review until April 13, 1982, a time after the court's issuance of its February 1982 memorandum. Further, in opposing Audrian's 1988 motion, John's counsel filed a responsive declaration stating, "The order dated September 23, 1982 memorializing the January 12, 1982 order of the Court still remains as the pending order of the Court." At the August 1988 hearing on Audrian's motion, John's counsel also stated "my contention is the modification that was rendered in September of 1982 is the order in which we are dealing with today."

2

## SECTION 5124 DOES NOT BAR RELIEF HERE

Asserting Audrian filed her request to reinstate her interest in John's pension after expiration of section 5124, subdivision (c)'s "window

period," John contends the court was without jurisdiction to grant her request. We disagree. The September 1982 order's reservation of jurisdiction over John's pension offered Audrian a remedy independent of section 5124. The superior court properly found Audrian's right to reinstate her interest in John's pension was not limited by section 5124 "or any time period at all."[4]

Section 5124, subdivision (a), permitted the court to modify a judgment becoming final on or after June 25, 1981, and before February 1, 1983, to include a division of military retirement benefits. The court could grant such modification regardless whether the judgment "expressly reserved the pension issue for further determination." (§ 5124, subd. (b).) Any proceeding under section 5124 had to be brought before January 1, 1986. (§ 5124, subd. (c).)

Nothing in section 5124 precluded Audrian from filing her pension reinstatement request in 1988 under the clause in the September 1982 order expressly reserving jurisdiction over the pension. Section 5124 simply allowed parties to modify judgments becoming final between the effective dates of *McCarty* and FUSFSPA where such judgments would otherwise not be subject to modification. (*In re Marriage of Barnes* (1987) 43 Cal.3d 1371, 1377 [240 Cal.Rptr. 855, 743 P.2d 915]; see *Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421, fn. 5 [212 Cal.Rptr. 162, 696 P.2d 656].)[5] Here the September 1982 order by its terms was expressly subject to modification. Audrian brought her motion under the terms of the September 1982 order, not under section 5124. ▮▮▮▮▮ In light of the September 1982 order's express reservation clause, Audrian did not need to rely on section 5124. (*Mueller* v. *Walker* (1985) 167 Cal.App.3d 600, 605-606 [213 Cal.Rptr.

---

[4] At the August 1988 hearing on Audrian's request, the court stated "as this judgment is written and as I interpret the plain language of it, there was a right in [Audrian] to seek to reinstate her retirement rights. It was an unlimited right. It was not limited by 5124. It wasn't limited by any time period at all. It simply said the court reserves jurisdiction to respond to future changes."

[5] "Section 5124 is a clear expression of legislative intent that recovery of a community property interest in a military pension should not be barred simply because the case fell by chance into the 18-month gap between the effective dates of FUSFSPA and the *McCarty* decision. [Citation.]" (*In re Marriage of Barnes, supra*, 43 Cal.3d at p. 1377.)

"The few unfortunate nonmember spouses whose judgments . . . became final between [June 25, 1981, and February 1, 1983, the effective dates of *McCarty* and FUSFSPA, respectively] were given special permission by the California Legislature to ask that the judgments be modified 'to include a division of military retirement benefits payable on or after February 1, 1983, . . .' (Civ. Code, § 5124, added by Stats. 1983, ch. 775, § 1, p. 2853.)" (*Aloy* v. *Mash, supra*, 38 Cal.3d at p. 422, fn. 7.)

The superior court noted FUSFSPA was the change in the law referred to in the reservation clause of the September 1982 order. The court stated: "FUSFSPA is the change. 5124 is the response to FUSFSPA to close the gap to make sure that nobody is penalized."

442].)[6] Thus, the time limitation of section 5124, subdivision (c), did not apply here.

## B

### REMAND ON ISSUES OF SPOUSAL SUPPORT AND PROMISSORY NOTE

■ Asserting Audrian's pension rights, support rights and promissory note payment obligations were intricately linked in the interlocutory judgment and the September 1982 modification order, John contends the court erred in reinstating Audrian's community property interest in his pension without also reinstating the payment schedule for the promissory note and terminating her rights to spousal support. Audrian contends John in 1988 did not seek affirmative relief with respect to the note or spousal support. She asserts the court made no orders on those issues because it was not asked to reinstate the payment schedule on the note or terminate her support rights. We remand the matter to the superior court to determine the issues of spousal support and the promissory note.

The 1977 interlocutory judgment required John to pay Audrian $450 monthly spousal support until further court order, Audrian's remarriage or the death of either party. The interlocutory judgment also required John to pay Audrian 44 percent of his gross monthly military retirement, with the first payment commencing upon emancipation of the parties' youngest child. The interlocutory judgment required Audrian to execute a $25,000 promissory note favoring John for his community property interest in the parties' residence, payable upon emancipation of the parties' youngest child in a monthly amount equal to one-half Audrian's then community interest in John's gross monthly military retirement pension. The interlocutory judgment further provided Audrian's community interest in John's military retirement would be deemed paid for each month John complied with existing orders for child and spousal support until emancipation of the parties' youngest child.

The September 1982 order required John to continue paying Audrian $450 monthly spousal support until further order, Audrian's remarriage or either party's death. The order also provided John's military retirement pension was his separate property and Audrian was presently not entitled to any interest in the pension. The court modified the interlocutory judgment

---

[6] "It is true as a general principle of law after the trial court has divided the property, and the judgment has become final, the court loses jurisdiction to modify or alter the division made. [Citation.] An exception to this general rule, however, arises in cases where the court expressly reserves jurisdiction to modify a property award. [Citations.]" (*Mueller* v. *Walker*, *supra*, 167 Cal.App.3d at pp. 605-606.)

to provide Audrian's promissory note to John should be paid upon sale, exchange or substantial refinancing of the residence.

When in 1988 Audrian requested reinstatement of her community property interest in John's pension, the parties' youngest child was emancipated. In seeking reinstatement of her interest in the pension and assertedly due pension arrearages, Audrian stated John was entitled to credit each month for the $450 paid to her. Audrian specifically requested the court order John to pay her 44 percent of his gross retirement "in lieu of spousal support" and reserve jurisdiction over further spousal support. However, despite Audrian's express concessions regarding spousal support, the court made no determination on the issue of support.

Further, in seeking reinstatement of her interest in John's pension and arrearages, Audrian asserted the residence was on the market for sale. Audrian specifically requested the court award her a credit against the promissory note "as of the close of Escrow." Audrian also asked the court to order John to pay her 44 percent of his retirement "after the close of Escrow."[7] We are unable to ascertain from the record whether the property has been sold. However, in any event, despite Audrian's specific references to the promissory note the court made no determination on the issue of the note.

The record shows the matters of the pension, spousal support and the promissory note were at all times intertwined. Indeed, Audrian's own statements in her moving papers and oral argument supporting her 1988 motion to reinstate her pension interest connected the issue of the pension to the issues of spousal support and the promissory note. Audrian's papers and oral argument defined the scope of the motion before the court. However, the court ruled only on the issue of the pension. On this record, we conclude the court should have ruled on issues of spousal support and the promissory note. Accordingly, we remand the matter for further proceedings. Further, any request for attorney fees under section 4370 should be addressed to the superior court for determination in its discretion.

### DISPOSITION

We affirm the order insofar as it reinstates Audrian's community interest in John's military retirement pension. We remand the matter to the superior

---

[7] At oral argument Audrian requested reinstatement of her interest in the pension. Audrian also stated the difference between John's support payments and her accrued interest in the pension should be offset against the promissory note.

In her respondent's brief, Audrian states she filed her 1988 motion "seeking credit against the note she owed to husband on the residence and for payment of retirement benefits."

court for further proceedings on the issues of spousal support and Audrian's obligation on the promissory note.

The parties shall bear their own costs on appeal.

Benke, J., and Nares, J., concurred.